UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**UNITED STATES OF AMERICA**
ex rel. **JESSICA ELS,**

      **Plaintiffs,**

v.                                                Case No.  6:19-cv-1884-CEM-DCI

**ORLANDO HEART &**
**VASCULAR CENTER, LLC and**
**VINEEL SOMPALLI,**

      **Defendants.**
_____/

## ORDER

THIS CAUSE is before the Court on Defendants' Amended Motion to Dismiss ("Motion," Doc. 34), to which Relator filed a Response in Opposition (Doc. 35) and a Corrected Response in Opposition (Doc. 36), and Defendant filed a Reply (Doc. 40). For the reasons stated herein, the Motion will be granted in part and denied in part.

### I.    BACKGROUND

This action arises under the False Claims Act, 31 U.S.C. § 3729 *et seq*. (Am. Compl., Doc. 12, at 1). "[T]he False Claims Act imposes civil liability on 'any person' who 'knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval' to the Government or to certain third parties acting

on the Government's behalf." *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507, 1510 (2019) (quoting 31 U.S.C. § 3729(a), (b)(2)). The Act authorizes "a private person, known as a relator, [to] bring a *qui tam* civil action 'for the person and for the United States Government' against the alleged false claimant, 'in the name of the Government.'" *Id.* (quoting 31 U.S.C. § 3730(b)).

In the instant action, Relator, a former employee of Defendant Orlando Heart & Vascular Center, LLC ("OHVC"), filed this *qui tam* action against Defendants, alleging violations of the False Claims Act. (Doc. 12 at 1). OHVC "specializes in cardiovascular care," and Defendant Vineel Sompalli is a medical doctor and the Managing Member of OHVC. (*Id.* at 4–5). Relator began her employment on May 6, 2019, "as the Technical Director of OHVC's Echo Lab." (*Id.* at 5). In this role, Relator alleges that she "observed the falsification of information in medical records including, for example, inputting false symptoms and diagnosis codes to support the provision of medically unnecessary and/or non-covered services, as well as falsification of the identity of the rendering provider" and that she "personally witnessed" OHVC and Sompalli "submit[] claims to Medicare for medically unnecessary, non-covered, upcoded, and/or non-rendered services." (*Id.*). Upon observing these actions by Defendants, Relator alleges that she "complained, both orally and in writing, to OHVC management and Dr. Sompalli," and "[a]s a direct

result of her complaints," her employment was terminated on June 26, 2019. (*Id.* at 17).

Relator asserts five counts—four counts for alleged violations of the False Claims Act and a single count for an alleged violation of the Florida Whistleblower Protection Act ("Whistleblower Act"), Fla. Stat. § 448.101 *et seq.* (*Id.* at 18–21). Defendants move to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 34 at 1).

## II. LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Ordinarily, in deciding a motion to dismiss, "[t]he scope of the review must be limited to the four corners of the complaint." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

### III. ANALYSIS

Counts I through III allege violations of the False Claims Act for the submission of false claims to Medicare, false statements to Medicare, and failure to repay overpayment from Medicare, respectively. (Doc. 12 at 18–20). Count IV alleges a claim for wrongful retaliation under the False Claims Act. (*Id.* at 20–21). And Count V is a state law claim under the Whistleblower Act alleging retaliatory discharge. (*Id.* at 21). Counts I through III are subject to Rule 9(b)'s heightened pleading standard, whereas Counts IV and V are only subject to Rule 8(a)'s pleading standard. *United States ex rel. Clausen v. Lab'y Corp. of Am.*, 290 F.3d 1301, 1309–10 (11th Cir. 2002) (noting that it is "'well settled' and 'self-evident' that the False Claims Act is 'a fraud statute' for the purposes of Rule 9(b)" (citation omitted));

*United States ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1304 (11th Cir. 2010) (holding that a False Claims Act retaliation claim is not subject to Rule 9(b)'s heightened pleading standard); *Johannaber v. Emory Univ.*, No. 1:08-cv-2201-TWT, 2009 U.S. Dist. LEXIS 138359, at *8 (N.D. Ga. Dec. 14, 2009) ("Unlike [Relator]'s fraud claim, her retaliation claim is not subject to Rule 9(b)'s heightened pleading standard.").

### A.     Counts I through III—Rule 9(b) Heightened Pleading Standard

Defendants argue that the Amended Complaint fails to satisfy Rule 9(b)'s heightened pleading standard because Relator has not "identif[ied] even a single record presented or false claim submitted to Medicare" and "[b]ecause Relator's amended complaint lacks any indicia of reliability." (Doc. 34 at 9, 18). Defendants' argument is twofold, so the Court will address each argument in turn.

#### 1.     *Specific Sample False Claim*

First, Defendants argue that Relator has not provided sufficient information regarding a specific false claim submitted to the government. As noted above, Federal Rule of Civil Procedure 9(b) requires fraud claims to be pled "with particularity." To satisfy Rule 9(b)'s particularity requirement in a False Claims Act case, "the complaint must allege 'facts as to time, place, and substance of the defendant's alleged fraud, and the details of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them." *Corsello v. Lincare, Inc.*, 428

F.3d 1008, 1012 (11th Cir. 2005) (quoting *Clausen*, 290 F.3d at 1310 (internal quotations omitted and alterations incorporated)); *United States ex rel. Matheny v. Medco Health Sols., Inc.*, 671 F.3d 1217, 1225 (11th Cir. 2012) ("In order to plead the submission of a false claim with particularity, a relator must identify the particular document and statement alleged to be false, who made or used it, when the statement was made, how the statement was false, and what the defendants obtained as a result."). Therefore, under this analysis, "to survive a motion to dismiss, a complaint must allege with particularity that false claims were actually submitted to the government." *United States ex rel. Shurick v. Boeing Co.*, 330 F. App'x 781, 783 (11th Cir. 2009).

In the Amended Complaint, Relator details an alleged scheme whereby "Defendants engaged in a coordinated and collaborative effort to generate and submit false claims and documents to the Medicare Program for their financial benefit," (Doc. 12 at 5), by performing medically unnecessary procedures on patients, allowing unqualified medical providers to perform procedures, miscoding procedures, and billing for procedures not performed, (*id.* at 8–17). The Eleventh Circuit has "repeatedly held that the submission of a false claim is the '*sine qua non* of a False Claims Act violation.'" *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1328 (11th Cir. 2009) (quoting *Clausen*, 290 F.3d at 1311). "Improper practices standing alone are insufficient to state a [False Claims Act] claim . . . absent

allegations that a specific fraudulent claim was in fact submitted to the government." *Id.* The latter scenario is what the majority of the Amended Complaint alleges—improper practices alone. Relator's only allegations regarding *specific* alleged false claims are provided in three spreadsheets attached to her Amended Complaint, which purport to show "sample claims submitted to Medicare by the Defendants" for three different types of medical procedures. (*Id.* at 17; *see also* Ablation Sample Claims, Doc. 16-5, at 2; Aortic Duplex Scan Sample Claims, Doc. 16-6, at 2; Cerebral Duplex Scan Sample Claims, Doc. 16-7, at 2). Relator argues that the information contained within these three spreadsheets is sufficient to satisfy Rule 9(b)'s particularity requirements for a False Claims Act claim.

These spreadsheets do provide details as to the "who, what, where, [and] when" of claims, but the spreadsheets—and the Amended Complaint—are devoid of the important allegation of "how" these claims were false. *Corsello*, 428 F.3d at 1014 (internal quotations omitted). For example, the first line of the first spreadsheet details a claim for procedure "36478"[1] performed by Sompalli for patient "P" on October 5, 2017, which was submitted for payment in the amount of $2,406.00 on October 10, 2017, and paid in the amount of $934.74 on October 24, 2017. (Doc. 16-5 at 2). What is notably missing from this spreadsheet—and the Amended

---

[1] The Amended Complaint alleges that this procedure code is used to indicate a procedure "called [an] endovenous laser ablation." (Doc. 12 at 8).

Complaint—is how this claim was a *false* claim. This is true for all of the claims set forth in the spreadsheets. Relator has not tied her general, non-specific allegations of fraud to any specific claim, nor has she otherwise explained why the submissions to Medicare for the specific claims were improper. *Matheny*, 671 F.3d at 1225 (noting that an essential allegation to satisfy Rule 9(b)'s particularity requirement is "how the statement was false"); *Carrel v. AIDS Healthcare Found., Inc.*, 898 F.3d 1267, 1277 (11th Cir. 2018) ("To be sure, the relators made particular allegations about the John Doe representative claims, but these claims cannot help the relators because they involved no fraud.").

"When Rule 9(b) applies to a complaint, a plaintiff is not expected to actually *prove* his allegations, and [the Court] defer[s] to the properly pleaded allegations of the complaint." *Clausen*, 290 F.3d at 1313. Although the Court "construe[s] all facts in favor of the plaintiff when reviewing a motion to dismiss," for a claim subject to Rule 9(b)'s particularity requirement, the Court may not "make inferences about the submission of fraudulent claims because such an assumption would 'strip[] all meaning from Rule 9(b)'s requirements of specificity.'" *Corsello*, 428 F.3d at 1013 (alteration in original) (quoting *Clausen*, 290 F.3d at 1312 n.21). The Amended Complaint fails to sufficiently allege that Defendants submitted any specific false claims to Medicare.

### 2. *Indicia of Reliability*

This does not end the inquiry. "Providing exact billing data . . . or attaching a representative sample claim is one way a complaint can establish the necessary indicia of reliability that a false claim was actually submitted." *United States ex rel. Mastej v. Health Mgmt. Assocs.*, 591 F. App'x 693, 704 (11th Cir. 2014). "However, there is no per se rule that a[ False Claims Act] complaint must provide exact billing data or attach a representative sample claim." *Id.* Rather, the Eleventh Circuit applies "a case-by-case" approach to evaluate whether a False Claims Act complaint contains "sufficient indicia of reliability." *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1358 (11th Cir. 2006). "Although there are no bright-line rules," the Eleventh Circuit "has indicated that a relator with direct, first-hand knowledge of the defendants' submission of false claims gained through her employment with the defendants may have a sufficient basis for asserting that the defendants actually submitted false claims." *Mastej*, 591 F. App'x at 704 (citing *United States ex rel. Walker v. R & F Props. of Lake Cnty., Inc.*, 433 F.3d 1349, 1360 (11th Cir. 2005)). "By contrast, a plaintiff-relator without first-hand knowledge of the defendants' billing practices is unlikely to have a sufficient basis for such an allegation." *Id.* (citing *Atkins*, 470 F.3d at 1359).

Here, Relator was employed "as the Technical Director for OHVC's Echo Lab" from May 6, 2019, through June 26, 2019. (Doc 12 at 3, 5). In this role, it

appears that Relator "perform[ed] scans" on patients. (*Id.* at 15; *see also id.* at 11–13 (discussing Relator's example patient encounters)). Relator also alleges that she "observed the falsification of information in medical records," (*id.* at 5), "observed" errors in medical procedures, (*id.* at 11–13), "observed" medical procedures that were incorrectly coded, (*id.* at 16), and "is aware through her personal observations and admissions by OHVC staff that OHVC and Dr. Sompalli have engaged in the fraudulent conduct of having non-qualified staff perform [medical procedures] for many years," (*id.* at 13).

These allegations are analogous to the facts in *Atkins*, where the Eleventh Circuit explained:

> [Relator] has described in detail what he believes is an elaborate scheme for defrauding the government by submitting false claims. He cites particular patients, dates and corresponding medical records for services that he contends were not eligible for government reimbursement. [However, Relator] fails to provide the next link in the FCA liability chain: showing that the defendants *actually submitted* reimbursement claims for the services he describes. Instead, he portrays the scheme and then summarily concludes that the defendants submitted false claims to the government for reimbursement.

470 F.3d at 1359. Importantly, Relator has not connected the alleged fraudulent practices to an actual claim submitted to the government. *Corsello*, 428 F.3d at 1014 (noting that Relator "did not explain why he believes fraudulent claims were ultimately submitted" and that Relator's "contention that he was 'aware' of billing

practices was neither particular to any specific fraudulent claim against the government nor factually supported"); *Mastej*, 591 F. App'x at 704–05 ("It is not enough for the plaintiff-relator to state baldly that he was aware of the defendants' billing practices."); *Atkins*, 470 F.3d at 1358 ("Although the relator stated with particularity the circumstances comprising the elements of the alleged scheme to defraud, his complaint 'failed to meet the minimum pleading requirements for the *actual presentment of any false claims*.'" (emphasis in original) (quoting *Clausen*, 290 F.3d at 1315)).

Indeed, the alleged observations by Relator all occurred in May 2019, (Doc. 12 at 11–12), but none of the alleged sample claims in the spreadsheets were for procedures conducted in that month, (Doc. 16-7 at 2; Doc. 16-8 at 2; Doc. 16-9 at 2).[2] As noted above, based on the allegations in the Amended Complaint, the Court may not connect the dots and "make inferences about the submission of fraudulent claims.'" *Corsello*, 428 F.3d at 1013; *Estate of Helmly v. Bethany Hospice & Palliative Care of Coastal Ga., LLC*, 853 F. App'x 496, 502 (11th Cir. 2021) ("[A] false claim cannot be 'inferred from the circumstances.'" (quoting *Corsello*, 428 F.3d at 1013)).

---

[2] In fact, in all of the spreadsheets, there is only one claim that even occurred during Relator's employment, but that claim occurred on June 6, 2019, (Doc. 16-7 at 2), and all of Relator's allegations regarding Defendants' purportedly false claims are very specifically tied only to May 2019, (Doc. 12 at 11–12). Thus, even the claim that was submitted during Relator's employment fails to have sufficient indicia of reliability.

Nor does Relator's extremely short stint of employment with Defendants—51 days—in a role unrelated to submitting claims demonstrate the necessary indicia of reliability. *Atkins*, 470 F.3d at 1359 (holding that Relator, "a psychiatrist responsible for the provision of medical care, not a billing and coding administrator responsible for filing and submitting the defendants' claims for reimbursement," had not demonstrated the necessary indicia of reliability); *see also Clausen*, 290 F.3d 1301, 1314 (holding that a "corporate outsider" had not shown the necessary indicia of reliability); *Carrel*, 898 F.3d at 1278 ("[T]he relators failed to explain how their access to possibly relevant information translated to knowledge of actual tainted claims presented to the government. Indeed, that the relators supposedly had access to pertinent data and still were unable to pinpoint specific false claims . . . suggests that they lack any meaningful 'personal knowledge or participation in the fraudulent conduct.'" (citation omitted)); *Corsello*, 428 F.3d at 1013–14 (holding that a "sales employee['s]" complaint lacked sufficient indicia of reliability); *Cf. Hill v. Morehouse Med. Assocs.*, No. 02-14429, 2003 U.S. App. LEXIS 27956, at *14 (11th Cir. Aug. 15, 2003) (holding that a former billing and coding employee of a medical care provider satisfied Rule 9(b) because she "worked in the very department where she alleged the fraudulent billing schemes occurred").

Accordingly, Defendants' Motion will be granted as to Counts I through III, and these claims will be dismissed.

### B. Count IV—False Claims Act Retaliation

A relator asserting a claim under the False Claims Act retaliation provision must show that the relator "was engaged in protected conduct" and that the defendant "retaliated against him because of that protected conduct." *Mack v. Augusta-Richmond Cnty.*, 148 F. App'x 894, 896–97 (11th Cir. 2005).

The retaliation provision protects employees who are "discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . in furtherance of an action under [the False Claims Act] or other efforts to stop [one] or more violations of [the False Claims Act]." 31 U.S.C. § 3730(h)(1). The latter language regarding protection for "efforts to stop" violations of the False Claims Act is relatively new. *Hickman v. Spirit of Athens, Ala., Inc.*, 985 F.3d 1284, 1288 (11th Cir. 2021) (noting that "Congress amended the retaliation provision in 2009 and 2010, and the new language is broader than the old"). Prior to the addition of the new statutory language, the Eleventh Circuit applied a "'distinct possibility' standard, meaning that employees were protected not just when a [False Claims Act] action has been filed, but also when the filing of such an action was a distinct possibility." *Briggs v. QuantiTech Inc.*, No. 21-11448, 2022 U.S. App. LEXIS 11830, at *6 (11th Cir. May 2, 2022) (quoting *Hickman*, 985 F.3d at 1288; citing *Childree v. UAP/GA CHEM, Inc.*, 92 F.3d 1140, 1146 (11th Cir. 1996)). Following the statutory amendment, the Eleventh Circuit recognized that other circuits have

adopted an "objectively reasonable belief" standard, *Hickman*, 985 F.3d 1288–89 (citing *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 201 (4th Cir. 2018)), but the Eleventh Circuit has "yet to adopt a controlling standard," *Briggs*, 2022 U.S. App. LEXIS 11830, at *6 (citing *Hickman*, 985 F.3d at 1289). Under the reasonable belief standard, "'an act constitutes protected activity where it is motivated by an objectively reasonable belief that the employer is violating, or soon will violate,' the False Claims Act." *Hickman*, 985 F. 3d at 1288 (citation omitted).

As noted above, the Eleventh Circuit "has not yet considered what the new language means for would-be plaintiffs." *Id*. But, it is clear from the plain language of the statute that the amendments broadened the scope of the retaliation provision, so without additional guidance from the Eleventh Circuit the Court will apply the objectively reasonable belief standard. Nonetheless, relators "are, at a minimum, required to show that the activity they were fired over had something to do with the False Claims Act—or at least that a reasonable person might have thought so." *Id.* at 1289. Therefore, an employee "must suspect that her employer has made a false claim to the federal government." *Rucker v. Great Dane Petroleum Contractors, Inc.*, No. 2:21-cv-207-SPC-MRM, 2021 U.S. Dist. LEXIS 174116, at *6–7 (M.D. Fla. Sep. 14, 2021) (quoting *Hickman*, 985 F.3d at 1289); *Hickman*, 985 F.3d at 1289 ("[T]he False Claims Act requires a false claim; general allegations of fraud are not

enough." (citing *Ruckh v. Salus Rehab., LLC*, 963 F.3d 1089, 1103 (11th Cir. 2020))).

Relator's only direct allegation regarding conduct protected by the False Claims Act is that she "complained, both orally and in writing, to OHVC management and Dr. Sompalli about the improper conduct described in this complaint and objected to the practices that resulted in the submission of false claims to the Medicare Program for medically unnecessary, upcoded and/or non-reimbursable claims." (Doc. 12 at 17). Applying the less onerous objectively reasonable belief standard, and viewing all facts and inferences in a light most favorable to Relator, this allegation appears to be sufficient at this stage when paired with Relator's alleged observation of "the falsification of information in medical records." (*Id.* at 5). That is, the Court may, under the Rule 8(a) standard, reasonably infer that because Relator observed falsification of medical records and believed that OHVC and Sompalli were submitting those records to Medicare in support of claims, that she also "suspect[ed] that her employer . . . made a false claim to the federal government." *Hickman*, 985 F.3d at 1289. These allegations are sufficient to satisfy the first prong of a retaliation claim—that Relator "was engaged in protected conduct." *Mack*, 148 F. App'x at 896–97.

The second prong requires Relator to allege that Defendants "retaliated against [Relator] because of th[e] protected conduct." *Id.* In application, this prong

involves two separate elements: (1) "that the employer knew of [the relator]'s protected conduct" and (2) "that the employer took adverse action against the [relator] because of the protected conduct." *Lord v. Univ. of Miami*, 571 F. Supp. 3d 1299, 1308 (S.D. Fla. 2021) (citing *Farnsworth v. HCA, Inc.*, No. 8:15-cv-65, 2015 U.S. Dist. LEXIS 119261, at *6 (M.D. Fla. Sept. 8, 2015)); *Mack*, 148 F. App'x at 897 (holding that an employee must be able to show that his employer knew of the employee's protected conduct to satisfy the second prong of a False Claims Act retaliation claim).

Here, Relator alleges that she "complained, both orally and in writing, to OHVC management and Dr. Sompalli about the improper conduct." (Doc. 12 at 17). This allegation, taken as true, shows that Defendants knew of Relator's alleged conduct. Relator then alleges that she was terminated "[a]s a direct result of her complaints." (*Id.*). On a motion to dismiss, these allegations are sufficient. Therefore, Relator's claim for retaliation under the False Claims Act will not be dismissed at this time.[3]

### C.   Count V—Whistleblower Act Retaliatory Discharge

The Whistleblower Act "protects employees from retaliation for objecting to an employer's 'violation of a law, rule, or regulation.'" *Briggs*, 2022 U.S. App.

---

[3] This result is not inapposite to the dismissal of Counts I through III because those claims, unlike the retaliation claim, are subject to the heightened pleading standard of Rule 9(b).

LEXIS 11830, at *9 (quoting Fla. Stat. § 448.102(3)). To demonstrate a prima facie case under this provision of the Whistleblower Act, a plaintiff must show that: "(1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse employment action was causally linked to the protected activity." *Graddy v. Wal-Mart Stores E., LP*, 237 F. Supp. 3d 1223, 1226 (M.D. Fla. 2017) (citing *Kearns v. Farmer Acquisition Co.*, 157 So. 3d 458, 462 (Fla. 2d DCA 2015)).

"The Florida Courts of Appeal are split on whether a [Whistleblower Act] plaintiff must show that the defendants actually violated the law or whether he must only show that he had a good-faith, reasonable belief that the employer had violated such a law, rule, or regulation." *Briggs*, 2022 U.S. App. LEXIS 11830, at *9 (citing Florida District Courts of Appeal cases). Florida's Fourth District Court of Appeal has held that "all that is required is that the 'employee have a good faith, objectively reasonable belief that h[is] activity is protected by the statute.'" *Aery v. Wallace Lincoln-Mercury, LLC*, 118 So. 3d 904, 916 (Fla. 4th DCA 2013) (citation omitted). Whereas Florida's Second District Court of Appeal has expressly disagreed with *Aery* and noted that a plaintiff "must prove that he objected to an actual violation of law or that he refused to participate in activity that would have been an actual

violation of law."[4] *Kearns*, 157 So. 3d at 465. Neither the Florida Supreme Court[5] nor Florida's Fifth District Court of Appeal—in which the Middle District of Florida, Orlando Division sits—has ruled on the issue. *Graddy*, 237 F. Supp. 3d at 1226 (noting that "[t]he Supreme Court of Florida has not addressed th[e] apparent conflict between Florida's district courts of appeal"); *Chaudhry v. Adventist Health Sys. Sunbelt*, 305 So. 3d 809, 814 n.2 (Fla. 5th DCA 2020) (noting that the issue "is not properly before us, but has been the source of disagreement in cases decided by other district courts of appeal").

This Court need not decide which position is correct at this juncture because the allegations in the Amended Complaint are sufficient to satisfy the Second Circuit's more stringent standard. As explained above in regard to Count IV, Relator alleges that she complained both orally and in writing about Defendants' conduct, i.e., performing medically unnecessary procedures on patients, allowing unqualified medical providers to perform procedures, miscoding procedures, and billing for procedures not performed. She also alleges that Defendants used these records to bill Medicare, an allegation when accepted as true shows a violation of law. Relator then

---

[4] "Several federal courts have disregarded as dicta the Second District Court of Appeal's conclusion in *Kearns*." *Graddy*, 237 F. Supp. 3d at 1227 (citing cases). However, because the Eleventh Circuit has recognized the split in authority, *Briggs*, 2022 U.S. App. LEXIS 11830, at *9, so too does this Court.

[5] Absent a clear direction from the Florida Supreme Court on an issue, this Court is "bound to follow" decisions of the state's intermediate appellate courts unless there is some persuasive indication that the Florida Supreme Court would decide the issue differently. *Nunez v. Geico Gen. Ins. Co.*, 685 F.3d 1205, 1210 (11th Cir. 2012) (citation omitted).

alleged that her employment was terminated as a result of complaining about the potential law violations, i.e., submitting false claims to Medicare. (Doc. 12 at 21). Thus, the prima facie elements of a Whistleblower Act claim have been satisfied, and Count V will not be dismissed.

## IV. CONCLUSION

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendants' Amended Motion to Dismiss (Doc. 34) is **GRANTED in part** and **DENIED in part**.

    a. Counts I, II, and III are **DISMISSED**.

    b. The Motion is otherwise denied.

**DONE** and **ORDERED** in Orlando, Florida on September 27, 2022.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record